**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

STEPHEN S. HOOK,                                   :

                    Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.         :

Case No. 3:07-cv-146

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 18, 1993, and an application for SSI with a protective filing date of May 10, 1993, alleging disability from February 15, 1993, due to headaches, black outs, memory loss, depression, nerves, and nose bleeds. (Tr. 263-65; 221-35). Plaintiff's applications were denied at the initial, reconsideration levels. A hearing was held before Administrative Law Judge James Knapp who determined in a decision dated June 4, 1996, that Plaintiff was not disabled and therefore not entitled to benefits under the Act. *Id.* Plaintiff took no further appeal and Judge Knapp's decision became the Commissioner's final decision.

Plaintiff filed a second application for SSD on February 13, 2001, alleging disability from April 1, 2000, due to low blood pressure, dizziness, passing out, and forgetfulness. (Tr. 263-65; 288-97). Plaintiff's application was denied at the initial level, (Tr. 239-42), and Plaintiff took

no further appeal.

Plaintiff filed a third application for SSD on October 20, 2003, alleging disability from June 6, 2003, due to headaches, arthritis of the spine, shoulder, right hip, knee, and wrist, numbness in right hip, falling, and depression. (Tr. 271-73; 308-17). Plaintiff's application was denied initially and on reconsideration. (Tr. 243-46; 251-53). A hearing was held before Administrative Law Judge Thomas McNichols, (Tr. 655-84), who determined that Plaintiff is not disabled. (Tr. 12-23). The Appeals Council denied Plaintiff's request for review, (Tr. 5-6), Judge McNichols' decision became the Commissioner's final decision, and this appeal followed.

In determining that Plaintiff is not disabled, Judge McNichols first noted that his decision was consistent with *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and Social Security Acquiescence Ruling 98-4(6)[1]. (Tr. 12). Specifically, Judge McNichols noted that his current finding as to Plaintiff's residual functional capacity differs from the one Judge Knapp identified in his June, 1996, decision. *Id.* However, Judge McNichols noted further that while the current residual functional capacity was more restrictive, there was new and material evidence showing worsening of Plaintiff's condition to support such new findings. *Id.* Judge McNichols also found that Plaintiff has severe chronic low back pain attributed to arthritis, cervical spine, right hip, and right knee arthralgias, and a history of depression, but that he does not have an impairment or combination of impairments that met or equalled the Listings. (Tr. 15, finding 3; Tr. 17, finding 4). Judge McNichols then found that Plaintiff has the residual functional capacity to perform a limited range of medium work. (Tr. 17, finding 5). Judge McNichols then used section

---

[1] *Drummond* and AR 98-4(6) essentially provide that absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the residual functional capacity finding of a previous ALJ.

201.12 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 22, ¶ 10). Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 22, finding 11; Tr. 23).

Examining psychologist Dr. McIntosh reported on September 1, 1993, that Plaintiff was polite and cooperative, seemed to exaggerate his symptoms and complaints, attended school until the tenth grade, was psychiatrically hospitalized in 1963 shortly after being in the Army, exhibited no disturbances in posture, movement, or gait, and impressed him (Dr. McIntosh) as an unrealistic reporter of information due to his frequent "acting." (Tr. 108-14). Dr. McIntosh also reported that Plaintiff's overall affect was appropriate, he did not appear to be significantly depressed except when feigning such symptoms, he had attempted suicide at around age 22 when his first marriage was having difficulty, his hand wringing quickly diminished after he was required to concentrate on the evaluation process, there were no other signs of anxiety, and that he was alert and oriented. *Id.* Dr. McIntosh noted that Plaintiff's speech at first was very slow, monotonous and non-spontaneous, that after his "act" receded, he spoke with full inflection, that there was no flight of ideas, incoherence, or looseness of associations, he tried to present the picture of a very preoccupied individual with fears of driving a truck, and that his actions during the evaluation suggested that he lacked insight about how to report truthfully his mental disturbances. *Id.* Dr. McIntosh noted further that Plaintiff's verbal IQ was 86, his performance IQ was 78, and his full scale IQ was 82, he was in the low average range of cognitive functioning, testing revealed that his memory functioning was at a slightly below average level, he could read at the 9.2 grade level, he seemed to be making up a picture of his having become so stressed at his last job that he has a

morbid fear of returning to truck driving, he had an overall tendency to exaggerate and feign difficulties, and that he did seem to have undergone an adjustment change since being unable to work.  *Id*.  Dr. McIntosh opined that Plaintiff's diagnoses were adjustment disorder with depressed mood, malingering, and dependent traits, and he assigned Plaintiff a GAF of 70.  *Id*.  Dr. McIntosh opined further that Plaintiff's ability to understand, remember, and carry out 1 or 2 step job instructions was good after he began cooperating with the evaluation process, he would likely be willing and able to interact appropriately with others, and that he demonstrated concentration and attention capacities that were slightly below average on the testing tasks.  *Id.*

The record contains a copy of Plaintiff's treatment notes from the Veterans Administration Health Care Facility.  (Tr. 140-201).  Those notes are dated February, 1993, through July, 1994, and reveal that Plaintiff received treatment at that facility for various medical complaints and conditions as well as for post-traumatic stress disorder and depression.  *Id*.

Plaintiff continued to receive psychiatric treatment at the VA facility during the period November, 1994, through September, 1995.  (Tr. 204-09; 213-14).

Plaintiff was hospitalized August 22 through 24, 1995, for treatment of chest pain.  (Tr. 362-400).  Plaintiff was monitored, treated with medication, and his clinical test results were all within normal limits.  *Id.*  Plaintiff's discharge diagnoses were chest wall pain and anxiety/depression.  *Id*.

Plaintiff was hospitalized from January 2 through 5, 1996, for treatment of atypical chest pain and history of depression.  (Tr. 401-51).  Plaintiff was monitored, the results of his clinical and laboratory tests were within normal limits, and he was discharged on a low sodium diet.  *Id.*

Examining psychiatrist Dr. Ange reported on April 27, 1996, that Plaintiff seemed unable or unwilling to answer questions and his wife filled in most of the information, it was unclear throughout the interview why Plaintiff applied for disability, the best she (Dr. Ange) could determine was that he at one time had been a truck driver and he was totally disabled according to Dr. Walters [VA facility psychiatrist], and that he had been receiving psychiatric treatment at the VA facility for two to three years. (Tr. 215-20). Dr. Ange also reported that Plaintiff went to school until the tenth grade, he could read well, was somewhat unkempt, sighed and grimaced throughout the interview and occasionally groaned, he very seldom answered questions even on direct questioning and seemed to have great difficulty or was unwilling to answer the question, and that he seemed to be anxious in the sense that he wrung his hands, moved his hands up and down over his pants, and tapped on the table during the interview. *Id*. Dr. Ange noted that Plaintiff did not appear to have insight into his situation, his flow of conversation and thought was not spontaneous, and that his conversation sometimes seemingly was inappropriate with long periods of silence between questions and answers. *Id.* Dr. Ange noted further that as with Dr. McIntosh, it seemed to her that Plaintiff somewhat exaggerated some of his responses. *Id*. Dr. Ange opined that Plaintiff's diagnoses were adjustment disorder with depressed mood, possible malingering, and rule out a mixed personality disorder, that Plaintiff's abilities with respect to making occupational adjustments were fair, his abilities with respect to making performance adjustments were good to fair, and that his ability with respect to making personal-social adjustments was good to fair. *Id*.

Examining physician Dr. Johnson reported on July 21, 1997, that Plaintiff sustained a work-related knee injury on December 4, 1996, he eventually underwent surgery on April 16, 1997, for a torn menial meniscus anteriorly and a torn posterior lateral meniscus as well as a

7

subchondral defect on the medial tibial condyle. (Tr. 350-53). Dr. Johnson also reported that Plaintiff had a decreased range of motion of his right knee, manual muscle testing showed 5/5 strength throughout both lower limbs, deep tendon reflexes were 2+ and symmetrical at the knee, medial hamstring, and ankle, sensation was intact throughout both lower limbs, and that there was minimal crepitation at the patellofemoral joint on the right with passive range of motion and +1 crepitation on the left. *Id.* Dr. Johnson noted that Plaintiff was able to ambulate equal stride length and weight bearing, he could tolerate standing on his heels and toes, but reported increased pain with attempting to walk on either the heels or toes, the pain was referable to the right knee only, and that straight leg raising was negative. *Id.* Dr. Johnson opined that Plaintiff had not reached maximum medical improvement, he had residual atrophy and less than full range of motion of the right knee, he could benefit from a more intense reconditioning program, with six weeks of additional physical therapy focused on intensive reconditioning, Plaintiff would be able to return to his regular job, and that he could not return to his former position of employment as of this date. *Id.* Dr. Johnson also opined that Plaintiff was able to sit, stand, and walk for two hours each without interruption and for four hours each during an entire eight hour day, he was able to frequently lift and carry up to 12 pounds and occasionally up to 100 pounds, and that he expected Plaintiff would improve with additional therapy. *Id.*

       Examining psychologist Dr. Mary Ann Jones reported on December 11, 2003, that Plaintiff attended school through the tenth grade, saw a psychiatrist at the Veterans Administration Facility for post-traumatic stress disorder during the 1990s, that his facial expressions ranged from appropriate to dull, his general body movements were slow, he proved cooperative in interaction with the examiner and appeared to understand the purpose of the interview, spoke in a normal to low

volume voice, was very slow in answering questions, and that his conversation was only semi-coherent. (Tr. 452-58). Dr. Jones also reported that Plaintiff claimed a poor memory and was a marginal historian, his stream of thought ranged from retarded to disjointed, his thought association proved primarily circumstantial, his presenting demeanor could be characterized as defeated and resigned, his affect was sad, he was restless and maintained limited eye contact, he sighed heavily throughout the interview process, he presented as preoccupied with his symptomatology, he evidenced some significant confusion, presented as distracted with regard to his degree of consciousness, was oriented, had significant problems with concentration, and that memory bubbles were noted. *Id.* Dr. Jones noted further that Plaintiff reported that he experienced both recent and remote memory loss, presented with marginal information, judgment and reasoning ability to live independently, that testing results showed that his memory was in the low average range, and that his diagnoses were psychological factors affecting physical condition, dysthymic disorder, and cognitive disorder NOS. *Id.* Dr. Jones assigned Plaintiff as GAF of 53 and opined that Plaintiff's abilities to relate to others was moderately impaired, his ability to understand, remember, and follow instructions was moderately impaired, his mental ability to maintain attention, concentration, and persistence and pace to perform simple repetitive tasks was mildly impaired, and his mental ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired. *Id.*

Examining physician Dr. Danopulos reported on January 26, 2004, that the review of Plaintiff's systems was negative, his upper and lower extremities had full ranges of motion, his right knee revealed painful but normal motions, his right hip revealed painful but normal motions, there was no evidence of trophic changes in the lower extremities, his spine was painful to pressure

at the sacral area, his cervical spine motions were normal but painful, and his paravertebral muscles were soft and painless to palpation and pressure. (Tr. 459-68). Dr. Danopulos also reported that Plaintiff's bilateral straight leg raising was positive at 80 degrees, squatting and arising from squatting triggered right knee and lumbosacral spine pain, lumbosacral spine motions were restricted and painful, toe and heel gait could not be performed, and that there was no evidence of nerve root compression or peripheral neuropathy. *Id.* Dr. Danopulos also reported that Plaintiff's neurological examination was normal, lumbosacral spine x-rays revealed some anterior spurrings from L2 through L5, and that the objective findings were lumbar spine arthritis, cervical spine arthralgias, right hip arthralgias, headaches possibly triggered from his depression, right knee arthralgias and depression with sleeping problems. *Id.* Dr. Danopulos opined that Plaintiff's ability to do any work related activities like standing, walking, lifting, and carrying, were affected by his lumbar spine or arthritis, and that his headaches were affecting his mood and ability to work. *Id.*

Plaintiff continued to receive treatment at the Veterans Administration facility and the transcript contains a copy of his treatment records dated July, 1993 through April, 2006. (Tr. 489-652). On December 14, 2004, Dr. Schwartz, a psychiatrist at the Veterans Administration facility, reported that Plaintiff was first treated on June 22, 2004, that his diagnosis was major depression, his GAF was 52, that Plaintiff reported poor memory, sleep disturbances, personality changes, mood disturbances, emotional lability, difficulty thinking or concentrating, intrusive recollections of a traumatic experience, and hostility and irritability. *Id.* Dr. Schwartz also reported that Plaintiff's ability with respect to understanding and memory was mildly to moderately limited, his ability with respect to sustain concentration and persistence was mildly to moderately to markedly limited, his ability with respect to social interactions was mildly limited, that it was

unknown whether his impairments would last at least twelve months, that he did not believe Plaintiff was a malingerer, Plaintiff was capable of low stress work, and that it was likely that Plaintiff would be absent from work as a result of his impairments for more than three times a month. *Id*. A physician's assistant at the Veteran's Administration facility reported June 29, 2005, that Plaintiff's diagnoses were facet and joint arthritis, moderate, of the lumbar spine with sclerosis and spur formation and moderate degeneration of the cervical spine, that he was occasionally able to lift/carry up to five pounds, was able to stand/walk for one hour in an eight hour day and for one-half hour without interruption, could sit for one hour without interruption and for zero to one hour in an eight hour day, he was having anxiety attacks, his left hip was going numb, and that his ankles were swollen every night due to the arthritis. Id.

Plaintiff argues in his Statement of Issues that the Commissioner erred by finding that he was capable of performing medium work and by failing to properly evaluate his psychological impairment. (Doc. 5). Plaintiff also challenges the Commissioner's credibility findings. *Id*.

Essentially, Plaintiff argues that none of the physicians of record opined that he is capable of performing medium work as Judge McNichols described. However, there is no requirement that the Commissioner's finding with respect to residual functional capacity "match" a physician's opinion on the issue. Rather, the question is whether the Commissioner's decision is supported by substantial evidence.

Contrary to Plaintiff's argument, however, there is substantial evidence in the record to support the Commissioner's finding as to Plaintiff's residual functional capacity. Specifically, Judge McNichols based his conclusion as to Plaintiff's residual functional capacity on the findings which Dr. Danopulos reported including an essentially normal physical examination and no

11

neurological findings. *See*, Tr. 17-18. In addition, Judge McNichols noted that Plaintiff's VA treatment notes indicate that, generally, Plaintiff has received conservative care and contain few objective clinical findings. In rejecting the June, 2005, opinion as to Plaintiff's residual functional capacity contained in the VA records, Judge McNichols noted that the opinion was offered by a physician's assistant, and that it is not supported by the clinical findings contained in the VA records. *Id.* The Court cannot say that Judge McNichols erred in that regard. *See,* 20 C.F.R. §404.1502; *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

Further, the objective test results support Judge McNichols' conclusion as to Plaintiff's residual functional capacity. For example, nerve conduction studies performed in September, 2003, were normal. (Tr. 506). A lumbar spine CT also performed in September, 2003, revealed, at worst, moderate degenerative changes. *Id.* In January, 2004, x-rays of Plaintiff's lumbar spine indicated very early degenerative changes and a right hip x-ray was negative. (Tr. 462, 468).

Finally, the Commissioner's findings as to Plaintiff's residual functional capacity is supported by Plaintiff's reported activities. Specifically, Plaintiff has reported that he drives, vacuums, sweeps, goes to the mall, visits with others, goes fishing, walks, eats out, and travels to Kentucky twice a year to visit friends and relatives. (Tr. 671-75).

Plaintiff also argues that the Commissioner erred by rejecting his allegations of disability. However, for the same reasons that the Commissioner's findings with respect to Plaintiff's residual functional capacity is supported, the Commissioner did not err in evaluating Plaintiff's subjective allegations. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991); *see also, Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th

Cir. 2007). In addition, the conclusions of the examining mental health experts Drs. McIntosh, Ange, Jones indicate that Plaintiff is at least preoccupied with his symptomatology if not malingering.

Plaintiff argues next that the Commissioner erred in evaluating his (Plaintiff's) alleged mental impairment. However, contrary to Plaintiff's argument, the Commissioner's decision is supported by substantial evidence.

Although Plaintiff's treating psychiatrist at the VA facility, Dr. Schwartz, essentially reported that Plaintiff was disabled, the Commissioner had an adequate basis for rejecting that opinion. First, as noted above, Dr. McIntosh reported that Plaintiff's diagnoses included, *inter alia,* malingering. In addition, Dr. McIntosh opined that Plaintiff was capable of performing one and two-step job instructions, that he was able to interact appropriately with others, and that his abilities with respect to attention and concentration were, at worst, slightly below average. Further, Dr. Ange essentially reported that Plaintiff seemed unwilling to answer questions during her evaluation, that Plaintiff exaggerated his responses, and that his abilities with respect to performing job-related activities were, at worst, fair to good. Additionally, Dr. Jones reported that Plaintiff's abilities were, at worse, moderately to mildly impaired. Finally, the reviewing mental health experts of record concluded that, with the exception of his marked limitations related to complex job instructions, Plaintiff was, at worst, moderately to mildly limited by his alleged mental impairments. (Tr. 471-87). Under these facts, the Commissioner did not err in his evaluation of Plaintiff's mental impairments.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686

(S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

November 6, 2007.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).